David Joseph SHEEHAN, Appellant,

v.

Howard BEYER, Superintendent; Wilbur Smith, Captain; Boyd, Sergeant; Pat La Flore, Social Worker, Appellees.

No. 94–5392.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR 34.1(a)
Nov. 4, 1994.

Decided April 6, 1995.

agency's motion for summary judgment that no public interest was implicated by Manna's re-
quest.

David Joseph Sheehan, Trenton, NJ, pro se appellant.

Deborah T. Poritz, Atty. Gen. of N.J., Mary C. Jacobson, Deputy Atty. Gen., Janine L. Long, Deputy Atty. Gen., Office of Atty. Gen. of N.J., Division of Law, Richard J. Hughes Justice Complex, Trenton, NJ, for appellees.

Present: MANSMANN, HUTCHINSON and LEWIS, Circuit Judges

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

*Pro se* appellant, David Joseph Sheehan ("Sheehan"), appeals an order of the United States District Court for the District of New Jersey granting appellees summary judgment on his section 1983 action. Sheehan, who is presently confined at New Jersey State Prison at Trenton, is serving a life sentence with a thirty-five year mandatory minimum for armed robbery and weapon offenses. Appellees, Howard L. Beyer, Wilford Smith, Bradley Boyd and Patricia La-Flore (collectively "prison officials") are state prison officers or personnel.[1] Sheehan appealed after the district court denied his timely motion for reconsideration. He contends that the district court erred in granting summary judgment to the prison officials on the claim that his continued detention in close-custody following institutional dismissal of a disciplinary charge brought against him on Captain Smith's information violated his constitutional right to due process.

The district court held that any constitutionally protected liberty interest Sheehan might have in return to general population once prison authorities dismissed the disciplinary charge against him was not violated because prison overcrowding had made cell space in the general population unavailable. Therefore, Sheehan's continued detention in restricted housing was justified by necessity.[2] The district court also held that Sheehan failed to produce evidence showing that his continued confinement in close-custody was

1. Howard L. Beyer was the Administrator of the New Jersey State Prison from 1984 and at all relevant times. Wilford Smith (incorrectly referred to in the complaint as "Wilbur Smith") was a captain of corrections official employed by the New Jersey Department of Corrections as a corrections officer since 1973. Bradley Boyd (now deceased) was a corrections officer with the rank of sergeant during the events disclosed. He had been employed by the New Jersey Department of Corrections since 1975. Pat LaFlore (whose name is correctly spelled "LeFlore") was a social worker employed by the New Jersey Department of Corrections since 1983. Prison officials Smith, Boyd and LaFlore were all as-

signed to the New Jersey State. Prison during relevant times.

2. The absence of any vacancies in general population was the defense the prison officials asserted. The record also shows, however, that the disciplinary charge against Sheehan arose out of his insistence on remaining in a particular cell in general population when ordered to move to another general population cell. The record also indicates that Sheehan continued to insist on a return to "my cell" after the charge against him was dismissed. The record does not reflect why the original charge was dismissed.

in retaliation for his election against accepting a prison job so he could prepare "legal work" on his pending habeas corpus petition.

■ We conclude that New Jersey law gave Sheehan a constitutionally protected liberty interest in being returned to general population after he was found "not guilty" on the disciplinary charge Smith filed against him. We also conclude that there remains, on this record, a genuinely disputed issue of material fact as to whether vacant cells were available in the general population units while Sheehan was detained in close-custody after the disciplinary charge against him was dismissed. We will therefore vacate the district court's order granting summary judgment to the prison officials on Sheehan's due process claim and remand the case for further proceedings consistent with this opinion.[3]

## I.

### A.

On February 20, 1990, Sheehan was a general population inmate housed in Unit 3–C at New Jersey State Prison.[4] On that day, Captain Smith instructed Sergeant Boyd to locate an inmate on Unit 3–C who was on "idle" status and transfer him to Unit 2–R. Unit 2–R was a unit housing general population inmates. Sheehan was the only inmate in Unit 3–C who was on "idle" status. Smith wanted to transfer Sheehan out of Unit 3–C to make room for an inmate who had a prison job in Unit 3–C.

When Sergeant Boyd attempted to transfer Sheehan from Unit 3–C to Unit 2–R, Sheehan refused to move. His refusal led to a disciplinary charge for "conduct which disrupts the orderly running of the institution." This charge authorized his placement in Unit 1–L, a restricted housing unit, while awaiting a hearing on the disruption charge. Three days later, on February 23, 1990, the hearing was held and Sheehan was found "not guilty." He was reclassified as a general population inmate, but was not returned to general population, allegedly because of prison overcrowding.[5] In the meantime, Sheehan was detained in housing Unit 1–L until March 11, 1990 when he was transferred to administrative segregation Unit 7–L. Units 1–L and 7–L are close-custody units with restrictions that are not imposed on general population inmates. The prison authorities did not transfer Sheehan to a general population unit until March 21, 1990.

### B.

Sheehan alleges that the initial decision to transfer him, and his detention in restricted housing after the disciplinary charge against him was dismissed, were in retaliation for his permitted election of idle status, and violated his constitutional right not to be deprived of a liberty interest without due process. On

---

3. Sheehan also claimed that the prison officials violated his constitutional right to be free from cruel and inhumane punishment and deprived him of personal property without due process when they failed to return his legal papers. We agree with the district court that these claims are without merit. Accordingly, we will affirm the district court's order insofar as it dismisses them, essentially for the reasons given in its opinion. See Sheehan v. Beyer et al., No. 90–2800, slip op. at 9–14 (D.N.J. Jan. 13, 1993). Sheehan also asserts that the seizure of his "legal work" was a violation of his constitutional right of access to the courts. In this respect, it appears that the prison officials returned Sheehan's legal papers to him, shortly after the disciplinary charge was dismissed, while he was still in close-custody. A denial of Sheehan's liberty interest can be logically inferred from the prison officials' failure to transfer him to the general population after the dismissal of the disciplinary charge, but no similar logical inference connects a denial of his liberty interest in return to general population

with a denial of his right of access to the courts. Moreover, there is no evidence in this record to show that Sheehan suffered any material prejudice as a result of the prison officials' delay in returning his "legal work." Accordingly, we will also affirm the district court's dismissal of Sheehan's claim that he was denied access to the courts. See id. at 9–11.

4. Sheehan preferred not to have an institutional job at the prison so he could pursue legal work on his habeas corpus petition. As a result, prison authorities classified him as an "idle" status inmate.

5. In support of its defense of prison overcrowding, the prison officials submitted the affidavit of Howard L. Beyer, Administrator of New Jersey State Prison. Beyer stated generally that there had been continuous problems with overcrowding at New Jersey State Prison since 1982.

November 14, 1990, the prison officials filed a 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted. The district court denied it. Thereafter, Sheehan filed a motion to compel discovery of prison census counts and other documents that he contends prison officials were withholding from him. He stated these documents would show that there were vacant cells in general population units during the time he was detained in restricted housing. A magistrate judge denied Sheehan's motion to compel discovery when prison officials averred that the documents Sheehan sought did not exist.

Thereafter, the prison officials filed a motion for summary judgment. Sheehan opposed it and filed his own cross-motion for summary judgment. The district court granted summary judgment to the prison officials and denied Sheehan's cross-motion. This timely appeal followed.

## II.

The district court had subject matter jurisdiction over this case under 28 U.S.C.A. §§ 1331, 1343 (West 1993). We have appellate jurisdiction over the district court's final order denying Sheehan's motion for reconsideration of its order granting the prison officials' motion for summary judgment under 28 U.S.C.A. § 1291 (West 1993).

We exercise plenary review over a district court's order granting summary judgment. *See Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals, Inc.,* 913 F.2d 64, 76 (3d Cir. 1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991); *American Medical Imaging Corp. v. St. Paul Fire and Marine Ins. Co.,* 949 F.2d 690, 692 (3d Cir. 1991). Whether Sheehan had "a protected interest sufficient to trigger constitutional protection . . . is an issue of law over which [this Court's] review is plenary." *Clark v. Township of Falls,* 890 F.2d 611, 617 (3d Cir.1989). "[W]e apply the same test as the district court should have used initially." *Public Interest Research Group of New Jersey,* 913 F.2d at 76 (citation omitted). We evaluate the evidence the same way the district court should have to determine if there

are any remaining issues of material fact that would enable Sheehan to prevail after giving him, as non-moving party, the benefit of every favorable inference that can be drawn from the record. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## III.

An inmate does not have a right to be placed in the cell of his choice. *See Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."). Thus, in the first instance, Sheehan had no constitutional right to remain in Unit 3–C instead of Unit 2–R. The district court determined:

> The reason that the prison officials were attempting to transfer plaintiff to Unit 2–R was because *they needed to house another inmate on Unit 3–C who had a job on Unit 3–C.* Defendant Smith directed defendant Boyd to locate an inmate on Unit 3–C who was "idle" and would therefore not have any job-related ties to Unit 3–C. Plaintiff was the only "idle" inmate on Unit 3–C at that time so he was designated for the transfer.

> \*   \*   \*   \*   \*   \*

> [P]laintiff has not made a factual showing supporting [other reasons for his initial move]. . . . Conversely, defendants . . . submitted numerous affidavits setting forth their reasons for the initial need to transfer plaintiff to another general population unit.

*Sheehan v. Beyer et al.,* No. 90–2800, slip op. at 10 (D.N.J. Jan. 13, 1993).

We agree with the conclusion that the prison officials had a right to move Sheehan from Unit 3–C to Unit 2–R. We also agree with the district court's conclusion that Sheehan was properly placed in close-custody pending hearing on the disciplinary charge that resulted from his alleged refusal to move out of Unit 3–C. *See Layton v. Beyer,* 953 F.2d 839 (3d Cir.1992). Sheehan also claims, however, that his due process rights were violated when he was retained in close-custody after he was found "not guilty" of the disciplinary infraction.

**A.**

Sheehan avers that there were vacant cells in the general population units when he was detained in close-custody. He claims that the prison officials deliberately detained him in close-custody in retaliation for his election to work on his own legal matters instead of accepting a prison job. He states that the prison officials' assertion that prison overcrowding made cells in the general population unavailable is false. Therefore, he argues that their overcrowding defense does not defeat the inference of retaliation that arises out of his retention in restricted housing after he was found not guilty of the disciplinary charge that followed his initial refusal to move.[6]

The Due Process Clause of the Fourteenth Amendment does not give a prisoner a liberty interest in remaining among the general prison population. *Montanye,* 427 U.S. at 242, 96 S.Ct. at 2547. Thus, Sheehan has to identify a state law or regulation creating such a liberty interest. *See Hewitt,* 459 U.S. at 466, 103 S.Ct. at 868 ("Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States."); *Layton,* 953 F.2d at 842 (same); *Gibson v. Lynch,* 652 F.2d 348, 354–55 (3d Cir.1981) (same), *cert. denied,* 462 U.S. 1137, 103 S.Ct. 3123, 77 L.Ed.2d 1375 (1983). A protected liberty interest may be created

"not only by statutorily created rights but also by official policies or practices." *See Winsett v. McGinnes,* 617 F.2d 996, 1006 (3d Cir.1980), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981); *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).

In *Layton,* this Court decided that New Jersey's prison regulations "create[d] a liberty interest in remaining a part of the general prison population, or more particularly, remaining free of the restrictive confinement of [close-custody]." *Layton,* 953 F.2d at 846–47. The Court found that a New Jersey "inmate can form … a reasonable expectation that he will not be confined to [close-custody] unless …, after [a] hearing, [it is determined] that he meets the criteria for such placement." *Id.* at 847. Furthermore, if a disciplinary hearing is not provided within the time New Jersey regulations require, the *Layton* Court reasoned:

> The New Jersey statutes do not expressly require that an inmate be either returned to the general prison population or placed in [close-custody] unless a hearing is held within the prescribed five (presently ten) working days. However, there is no authority for an exception to the regulations which would allow continued confinement in [close-custody] beyond the five working day period. Consequently, *whether or not a hearing is held an inmate must, under the regulations, either be returned to the general prison population or, if the hearing committee properly so determines, be placed in [close-custody].*

*Id.* at 846 n. 13 (emphasis added).

We think *Layton* controls this case. If an inmate has a liberty interest which requires his return to the general population when a hearing is not held within a reasonable time after he is placed in close-custody pending disposition of a disciplinary charge, we believe he also has a right to be returned to the general population within a reasonable time after the disciplinary charge that put him in close-custody is dismissed.

---

**6.** The prison officials do not appear to have related Sheehan's insistence on selecting his own cell

to his continued detention in restricted housing after the disciplinary charge was dismissed.

The United States Court of Appeals for the Sixth Circuit, in *Mackey v. Dyke,* 29 F.3d 1086 (6th Cir.1994), recently reached the same conclusion. There a prison inmate brought a section 1983 action alleging that prison officials violated his constitutional right to due process when they failed to place him in the general population after he no longer qualified for confinement in administrative segregation. *Id.* at 1088. The prison officials filed a motion to dismiss or, alternatively, for summary judgment. The district court granted summary judgment for the prison officials, concluding that Michigan regulations gave an inmate no liberty interest in his release from administrative segregation even though the conditions that justified his placement no longer existed. *Id.* at 1091. The court of appeals reversed.

Mackey did not dispute the propriety of his initial confinement in segregation; but instead, like Sheehan, maintained that he had a right to be released into the general population once he had served his time on the disciplinary charge against him, and prison officials denied him due process when they failed to do so. *Id.* at 1088. The *Mackey* Court framed the question as follows: "does an inmate have a protected liberty interest in being released from segregation once the reason for the original placement expires?" *Id.* at 1092.

After examining the relevant Michigan statutes, regulations and policies, the Court concluded:

> [O]nce it has been determined that an inmate is entitled to be reclassified and

released, prison officials are not permitted to keep him there without instituting new charges and following all the procedures required for placing him there originally. Of course, although the defendants were required to reassign Mackey to the general population when no reason existed to keep him in segregation, they could hold him in segregation until bed space was found.

*Id.* at 1092; *See also Riley v. Johnson,* 528 F.Supp. 333, 341 (E.D.Mich.1981) (prisoner had a "right to be in the general population once found not guilty of misconduct; he had a protected liberty interest in being free of administrative segregation"). New Jersey's regulatory scheme for its prisons is similar in all material respects to Michigan's.[7]

▮▮▮▮ As the court in *Childs v. Pellegrin,* 822 F.2d 1382 (6th Cir.1987) reasoned: "[t]here is little difference between depriving a person of liberty without due process of law, on the one hand, and failing to restore someone's liberty after any legal justification for its deprivation has been eliminated, on the other hand." *Id.* at 1388. Thus, though there is no state law or regulation that determines precisely when an inmate is to be returned to the general population after he is found not guilty of a disciplinary charge, an inmate may not be unreasonably or arbitrarily detained in close-custody.[8] Accordingly, we hold that Sheehan had a protected liberty interest in being returned to the general population within a reasonable time after the disciplinary charge against him was dismissed.[9]

7. Though New Jersey does not have a state law or regulation specifically stating how soon an inmate must be returned to the general population following a finding that he or she is not guilty of a disciplinary charge, it does place significant limits on the discretion prison officials have in placing prisoners in close-custody. *See Layton, supra.* In addition, New Jersey State Prison Policy and Procedure Number 2.138(III)(A) and (III)(A)(1), in effect during the time Sheehan was retained in segregation, provides:

> In no case will an inmate classified as general population be moved from a housing unit of less confinement to a housing unit of closer-custody, unless ... for security (pre-hearing detention, observation, etc.).... In cases involving general population inmates who have been temporarily reassigned (e.g. detention,

hospital, remanded to court) and who are subsequently returned from the temporary reassignment, these inmates may be assigned to temporary emergency housing in a close-custody unit, if, during their absence their respective cells have been assigned to other inmates. The policy goes on to provide that a general population inmate temporarily housed in a close-custody unit will receive priority consideration for a reassignment. Policy and Procedure Number 2.138(III)(B).

8. We recognize that the prison officials may have a factual defense to Sheehan's claim on the issue of reasonable duration.

9. The district court cited *Gibson, supra,* to support its conclusion that Sheehan did not have a constitutionally protected liberty interest or a

## B.

■ If, as the prison officials assert, no cells were available in the general population because of prison overcrowding, there would be no constitutional violation in retaining Sheehan in close-custody until a cell in the general population became available. *See Gibson, supra; Mackey,* 29 F.3d at 1092. If general population cells were available, however, Sheehan's retention in restricted housing for approximately four weeks following dismissal of the disciplinary charge Smith lodged against him could violate the liberty interest that New Jersey law creates and the Due Process Clause of the Fourteenth Amendment protects.

■ Sheehan argues that the prison officials falsely asserted overcrowding justified his detention in close-custody after the disciplinary charge was dismissed.[10] To obtain evidence that the defense of overcrowding was false, Sheehan tried to discover from prison authorities documents showing which cells in the general population were occupied during the four weeks he was detained in segregation after the disciplinary charge was dismissed. The prison officials averred that such documents or information did not exist and there was no way of ascertaining whether any general population cells were vacant at that time.

In opposing summary judgment, Sheehan introduced exhibits that cast at least some doubt on the prison officials' assertion that no documents existed like those he sought. He submitted weekly census and wing counts indicating there were cell vacancies in general population during the time he was held in close-custody. The prison officials later ex-

plained their failure to produce these exhibits in response to Sheehan's initial request for discovery by claiming that they did not necessarily show that suitable cells in general population were vacant because the vacant cells "may be undergoing repair, ... may be condemned, the occupant inmate may be in detention, remanded to court or in the hospital." In other words, they argued that a showing of vacancy does not establish availability. Their response may, if believed, provide a factual defense, but so long as the availability of cells in the general population is in dispute, it will not support summary judgment in their favor.

■ On this record, we believe that the district court erred in granting summary judgment in reliance on prison officials' affidavits stating generally that New Jersey State Prison had been experiencing overcrowding since 1982. The district court incorrectly failed to assume that Sheehan's counter affidavit was credible when it held:

> Plaintiff ... alleges that the prison officials were deliberately attempting to interfere with plaintiff's legal work when they housed him in the close-custody units. However, plaintiff has not made a factual showing supporting this allegation.... Defendants, in the various affidavits submitted by them, have stated that the need to house plaintiff in temporary emergency housing from February 23, 1990 to March 21, 1990 was due to the *fact that there were no cells on the general population units which were available to house plaintiff.*

*Sheehan,* No. 90–2800 at 10 (emphasis added). Under these circumstances, the prison officials' affidavits were an insufficient basis

valid due process claim where the reason for not returning him to the general population was prison overcrowding. *See Sheehan,* No. 90–2800 at 7. We agree. This conclusion, however, overlooks the disputed fact as to whether general population cells were in fact available while Sheehan remained in close-custody after the disciplinary charge against him was dismissed. Moreover, in *Gibson,* the plaintiff was placed in administrative segregation as a matter of routine during the process of housing him as a new prisoner in a prison system that was critically overcrowded. *Gibson,* 652 F.2d at 350. Whether overcrowding precluded Sheehan's release to general population is the very fact at issue here.

In any event, Gibson is not inconsistent with our conclusion that Sheehan had a protected liberty interest in being returned to the general population after the legal justification for his initial placement in close-custody no longer existed. *See Riley,* 528 F.Supp. at 341.

10. *See Layton,* 953 F.2d at 849 ("If a New Jersey prison official attempted to put an inmate in [close-custody] for a reason other than an enumerated one (for example, as revenge for filing a § 1983 action), the inmate could reasonably expect to enforce the regulations against the official.").

for granting them summary judgment on Sheehan's claims that he was denied a liberty interest without due process. *See Mackey,* 29 F.3d at 1092. As we stated in Rundle:

> 'Documents filed in support of a motion for summary judgment are to be used to determine whether issues of fact exist and not to decide the fact issues themselves.' The burden of demonstrating the justification for a motion for summary judgment lies with the movant.

*United States ex rel. Jones v. Rundle,* 453 F.2d 147, 150 (3d Cir.1971) (emphasis added) (quotation and citations omitted).

Our conclusion that there remains a genuine issue of disputed fact concerning overcrowding is fortified by an additional exhibit Sheehan filed with this Court after we granted his motion to enlarge the original record. The prison officials did not produce this particular exhibit in response to Sheehan's discovery requests. It indicates not only the number of vacancies in particular units, but also the reasons for particular vacancies, *e.g.,* condemnation, remand to court, lock up and hospital visit.[11] In opposition to Sheehan's motion to enlarge the record the prison officials attempted to explain their response to Sheehan's initial discovery request that no such records existed as follows:

> The proposed exhibit is alleged to be a daily count sheet from 1994 which was never part of the record below and is not relevant to this appeal. Appellant admits in his brief in support of his motion to supplement the record that the exhibit *is not representative of the days in question, but rather, he erroneously believes that the court should consider it because defendants should have produced similar evidence of the days in question. Interestingly, according to the alleged exhibit, there are no vacancies in either units 3–C or 2–R, which are two units relevant to this case.*

Supp. Response Br. of Appellees at 2 (emphasis added). The prison officials previously asserted that

> the documents needed to verify such information are disposed of in the normal course of business. Furthermore, there is no way to determine what cells, even if they were vacant, may have been available for temporary housing, since the inmate may have been in court or out sick.

Supp.App. at 65 ¶ 10.

These documents and assertions reinforce our conclusion that a genuine disputed issue of fact remains as to whether vacant cells were available in the general population.[12] Moreover, Sheehan asserts during the time he was kept in close-custody, other inmates entering disciplinary detention after him, were released to general population cells before him. Accordingly, we hold that the district court should not have granted summary judgment in favor of the prison officials on Sheehan's claim that he was deprived of a liberty interest in being returned to the general population without due process.

## IV.

For the foregoing reasons, we will vacate the district court's grant of summary judgment in favor of the prison officials on Sheehan's liberty interest claim, affirm in all other respects and remand for further proceedings consistent with this opinion.

**11.** Sheehan claims that he "found/discovered [this exhibit] on the floor of [his] cell, in an unmarked, business-size white envelope, when [he] returned to his cell from recreation [one day]." Sheehan's Supp. Br. at 3. He asserts that he does not know who placed or caused the exhibit to be placed on the floor of his cell; his cell is of the open-bars cell door construction; and anyone could have placed the exhibit in his cell. *Id.*

**12.** Whether Sheehan's continued detention in restricted housing from February 23 to March 21 was unreasonable in duration also seems to us to be a question for the fact finder.