**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3165
_____

JASON KOKINDA,
                              Appellant

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS; DR. PILLAI,
(Official/personal capacity); CHRISTOPHER H. OPPMAN, MBA, MHA
(official/personal capacity); PATRICIA STOVER, (official/personal capacity);
IRMA VIHLIDAL, (Medical Director) (official/personal capacity); MARK
DIALESANDRO, DSCS (official/ personal capacity); ROBERT GILMORE,
(Superintendent) (official/personal capacity); JOHN DOE #1, CHCA (official/personal
capacity); SHELLEY MANKEY, (Unit Manager) (official/personal capacity);
CORRECT CARE SOLUTIONS, (Official/personal capacity)
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 16-cv-01457)
District Judge:  Honorable Mark R. Hornak
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 19, 2018

Before: GREENAWAY, JR., BIBAS and ROTH, Circuit Judges

(Opinion filed: June 24, 2019)

_____

OPINION*

_____

PER CURIAM

Appellant, Jason Kokinda, appeals from the District Court's order dismissing his civil action. We will affirm the District Court's judgment.

Kokinda, formerly a Pennsylvania prisoner at the State Correctional Institution in Waynesburg, Pennsylvania ("SCI-Greene"), filed a civil rights complaint pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1986, as well as Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Named as defendants were the Pennsylvania Department of Corrections ("DOC"), numerous employees of the DOC, a medical-services contractor, and a prison medical-services provider.[1] Defendants were sued in their official and individual capacities. In his third amended complaint (which is the operative pleading), Kokinda alleged that the various defendants violated his First, Eighth, and Fourteenth Amendment rights by denying him proper mental health treatment and related ADA accommodations, and by engaging in retaliation and a civil conspiracy.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] In particular, Kokinda named as defendants: the DOC and supervisors Christopher H. Oppman, Patricia Stover, Deputy Superintendent for Correctional Services Mark DiAlesandro ("DSCS DiAlesandro"), and Superintendent Robert Gilmore, as well as Unit Manager Shelley Mankey ("UM Mankey"), and Corrections Health Care Administrator Irma Vihlidal ("CHCA Vihlidal"); Dr. Pillai; and medical contractor, Correct Care Solutions ("CCS").

The Magistrate Judge ("MJ") to whom the action was referred issued a Report and Recommendation ("R&R") that sets forth, in detail, the allegations of Kokinda's complaint against defendants. See R&R at 2-6. Accordingly, we only briefly summarize those allegations here. Kokinda claims that on September 30, 2014, when he was housed on the mental health block at SCI-Greene, he submitted a request slip to CHCA Vihlidal that included an Inmate Disability Accommodation Form. In that form, he requested several accommodations for his alleged disabilities of Obsessive Compulsive Disorder and Hallucinogen Persisting Perception Disorder ("OCD/HPPD"), which resulted from his use of LSD as a teenager. When experiencing a stressful environment like the mental health block at SCI-Greene, Kokinda asserts that his OCD/HPPD "results in agitating ego-dystonic dreamlike visual thoughts … and [the] perception of things being contaminated with LSD; causing disorientation if [he] fails to effectuate specific cleaning rituals." Compl. at ¶¶ 1-2. To assist with managing his condition, Kokinda requested permission to take nightly showers, to be housed on a particular unit in a single cell, to be provided with a special soap containing lye, to be able to clean adequately, to be treated under more relaxed policies, and to be able to direct the order that prison officials searched his cell. Id. at ¶¶ 10-11. CHCA Vihlidal ultimately denied Kokinda's requests in one form or another, and denied his subsequent request for, inter alia, an immediate transfer to a lower security prison that does not use "misanthropic psychological adversity techniques as a form of mind-control security." Id. at ¶ 22.

3

Kokinda asserts that the lack of accommodations caused him to suffer effects similar to a "bad trip" on LSD. Id. at ¶ 20. He claims that, by denying his requests, CHCA Vihlidal showed deliberate indifference to his serious medical needs. Id. at ¶ 24. Defendants Oppman, Stover, DSCS DiAlesandro and Gilmore were alleged to be responsible as a result of their supervisory positions within the DOC. Id. at ¶¶ 38-41. Supervisory liability was likewise asserted against CCS, as was a claim of liability based on its failure to ensure that prisoners with disabilities are "properly accommodated with flexible policies" and for its failure to ensure that prisoners "are not fully denied handicap-related medical services." Id. at ¶ 37. Dr. Pillai, a treating physician at SCI-Greene, was alleged to have been liable for "not recording nor reporting the severity of [Kokinda's] 'stress-induced symptoms,'" not "helping [him] obtain ADA accommodations," and denying him "handicap-related medical services altogether; by not even providing any treatment for his severe OCD/HPPD at all, whatsoever." Id. at ¶¶ 42, 44. Kokinda further alleged that all defendants are culpable as conspirators due to their participation in a "secret unconstitutional policy of greed (generating profits at the expense of prisoners' health and lives), above any sense of morality or conscience." Id. at ¶¶ 38-41, 43, 50, 59-66. Finally, Kokinda alleged that all of the defendants looked for his weaknesses for the purpose of using "psychological stressors to traumatize [him] through adversarial psychology techniques … carr[ied] out under the guise of security" in retaliation for his filing of grievances about abusive prison conditions at SCI-Greene. Id. at ¶¶ 33, 57.

Defendants filed motions to dismiss for failure to state a claim for which relief could be granted. The MJ issued a Report recommending that the motions be granted and that Kokinda's third amended complaint be dismissed with prejudice. Over Kokinda's objections and after de novo review, the District Court adopted the R&R as the opinion of the court, granted defendants' motions and dismissed the third amended complaint with prejudice. The District Court subsequently denied Kokinda's motion for reconsideration filed pursuant to Fed. R. Civ. P. 59(e). This timely appeal followed.[2]

We have jurisdiction pursuant to 28 U.S.C. § 1291, and exercise plenary review of a District Court's decision to grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[3] Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). "[I]n deciding a motion to dismiss, all well-pleaded allegations . . . must be taken as true and interpreted in the light most favorable to the plaintiff[], and all inferences must be drawn in favor of

---

[2] Kokinda did not mention the District Court's order denying his reconsideration motion in his notice of appeal and, more importantly, he has raised no arguments addressed to that order in his appellate brief. We thus do not consider that order within the scope of this appeal. Even if we were to liberally construe the notice of appeal to include the order, see Pacitti v. Macy's, 193 F.3d 766, 776 (3d Cir. 1999), we would find no abuse of discretion on the part of the District Court. See McDowell v. Phila. Hous. Auth., 423 F.3d 233, 238 (3d Cir. 2005). The court correctly denied the Rule 59(e) motion insofar as Kokinda challenged the District Court's ruling that we affirm here.

[3] Because Kokinda makes no argument regarding CCS, we deem any challenge to the dismissal of that defendant as waived. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993). Such a challenge would be meritless in any event. See Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).

[him]." McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009) (internal citation omitted). To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As did the District Court, we construe Kokinda's pro se pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).

Even with such liberal construction, we agree with the District Court's summary disposition of Kokinda's claimed violations of §§ 1983, 1985(3), and 1986 against the DOC and the individual Commonwealth defendants sued in their official capacities because those claims are barred by the Eleventh Amendment. See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002). Additionally, Kokinda failed to state a claim under 42 U.S.C. § 1985(3) because he did not allege discrimination on account of his race or any other class-based ground for animus. See Griffin v. Breckenridge, 403 U.S 88, 102 (1971) (requiring racial or "otherwise class-based invidiously discriminatory animus"); cf. Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (en banc) (neither prisoners nor indigents are suspect classes for Fourteenth Amendment equal protection purposes).[4] Because Kokinda failed to state a

---

[4] We further conclude that there is nothing in Kokinda's filing to suggest that he was attempting to bring an equal protection claim by a "class of one," i.e., an individual claiming "that [ ]he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). To the contrary, Kokinda repeatedly referenced himself and "the class of prisoners like him," with no mention of

viable claim under § 1985(3), his claim pursuant to 42 U.S.C. § 1986 necessarily fails. See Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980). Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability. See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc); see also Koslow v. Pennsylvania, 302 F.3d 161, 178 (3d Cir. 2002) (noting that "there appears to be no individual liability for damages under Title I of the ADA").

The District Court was likewise correct to dismiss the complaint as to defendants Oppman, Stover, DSCS DiAlesandro, Gilmore and UM Mankey given Kokinda's failure to sufficiently plead that they were personally involved in any of the alleged violations. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)) ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior."). With the exception of UM Mankey's response to his request for state-issued soap, Kokinda's third amended complaint fails to set forth specific allegations that these defendants were personally involved in any of the actions about which he complains. Moreover, UM Mankey's response instructing Kokinda how to make a proper request for certain soap does not

disparate treatment between him and the others in the "class." See, e.g., Compl. at ¶¶ 38-41.

7

amount to personal involvement within the meaning of § 1983. See Rode, 845 F.2d at 1208. Kokinda's conclusory allegations of a conspiracy among defendants to implement "a policy of greed over civil rights" does little to salvage his claim. See Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015) (a conspiracy claim depends on whether a constitutional violation occurred); see also Capogrosso v. Supreme Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (per curiam) (A conspiracy claim "must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal.").

The claims against defendants CHCA Vihlidal and Dr. Pillai fare no better. The Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations omitted). To state an Eighth Amendment conditions of confinement claim, Kokinda must allege that (1) the deprivation alleged was objectively, "sufficiently serious" such that the prison officials' acts or omissions resulted in the denial of "the minimal civilized measure of life's necessities"; and (2) that the prison officials exhibited a "deliberate indifference" to his health and safety. Id. at 834 (citations omitted). Where conditions are not "cruel and unusual" but merely "restrictive and even harsh," they do not violate the Eighth Amendment but rather "are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Wilson v. Schillinger, 761 F.2d 921, 925 (3d Cir. 1985) (An inmate's rights are "subject

8

to limitations and restrictions that would be intolerable if imposed against the general public.").

Kokinda's complaint is void of allegations that defendant CHCA Vihlidal caused him to suffer the deprivation of those means necessary for the maintenance of life's necessities (and, in particular, his hygiene) because he was denied residue-free lye soap, nightly private showers, and a laundry policy permitting the more frequent washing of his bedding and coat. Moreover, as the District Court correctly stated, Kokinda had no protected right to be placed in the cell of his choice, see Sheehan v. Beyer, 51 F.3d 1170, 1174 (3d Cir. 1995), or to be transferred to a particular penal institution. See Asquith v. Dep't of Corr., 186 F.3d 407, 410 (3d Cir. 1999). Given that "maintaining institutional security and preserving internal order and discipline" is of paramount importance to prison officials, we likewise agree with the District Court that Kokinda's constitutional rights were not violated simply because he could not dictate the manner in which prison officials conducted searches of his cell. See Bell v. Wolfish, 441 U.S. 520, 546 (1979).

Perhaps somewhat troubling, at first blush, is Kokinda's allegation that defendant Dr. Pillai violated his Eighth Amendment rights by failing to provide treatment or handicap-related medical services to reduce the stress of his OCD/HPPD. Compl. at ¶¶ 44-45. However, we must agree with the District Court's conclusion that Kokinda's assertion is conclusory and lacking in supporting factual detail. See Iqbal, 556 U.S. at 678-79. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . .

9

proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Establishing a claim requires proving both an objective component—"a serious medical need"—and a subjective component—"acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). A plaintiff may show deliberate indifference by demonstrating that "there was objective evidence that [the] plaintiff had serious need for medical care . . . and prison officials ignored that evidence" or where "necessary medical treatment is delayed for non-medical reasons." Id. (internal quotation marks omitted). Even assuming arguendo that his OCD/HPPD amounted to a serious medical condition, the third amended complaint falls short of stating an Eighth Amendment violation against Dr. Pillai. Rather than allege that he requested necessary medication or treatment from Dr. Pillai that was denied, Kokinda instead acknowledged that past treatment attempts (by health care providers other than Dr. Pillai) in the form of tranquilizers, antipsychotic medications, and relaxation techniques were unsuccessful, and some came with "severe intolerable side-effects." See Compl. at ¶¶ 31-32. Eighth Amendment liability does not fall upon Dr. Pillai simply because Kokinda discovered after his release from confinement that certain antidepressants and over-the-counter herbal supplements appeared to be effective in helping to manage his OCD/HPPD symptoms in certain environments. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

We dispose of Kokinda's First Amendment claim with little discussion as the District Court properly concluded that he failed to sufficiently allege retaliatory conduct

10

that caused him to suffer an adverse action.  See Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001).  Kokinda's third amended complaint likewise falls woefully short of alleging a Fourteenth Amendment equal protection claim.  See Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).  Finally, the District Court did not err in concluding that Kokinda's claim under Title II of the ADA against the DOC fails as a matter of law insofar as he did not assert that he was denied adequate accommodations or medical treatment on account of or because of his disability as required.  42 U.S.C. 12132; see also Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010).

We have considered Kokinda's remaining arguments and have determined that they are meritless.  Moreover, under the circumstances of this case, the District Court did not abuse its discretion in dismissing Kokinda's complaint without further leave to amend.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Contrary to Kokinda's assertion that he "was not given even one opportunity to amend his Complaint," see Appellant's Br. at 10, the District Court afforded him three opportunities to correct the deficiencies in his complaint.  Accordingly, we will affirm the District Court's order dismissing Kokinda's third amended complaint with prejudice and without leave to amend.