**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3078
_____

QUINTEZ TALLEY,
Appellant

v.

MAJOR CLARK; CAPTAIN  MASICELLINO; WARDEN CYNTHIA LINK;
LAURA BANTA; PA. DEPT. OF CORRECTIONS; PAUL, RN;
RICHARD DOYLE; R LADONNE; UNKNOWN  SHIFT COMMANDER;
UNKNOWN EXTRACTION TEAM; UNKNOWN PSYCHIATRIST
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:18-cv-05315)
District Judge:  Honorable Timothy J. Savage
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 3, 2023

Before: SHWARTZ, BIBAS, and PHIPPS, <u>Circuit Judges</u>

(Opinion filed: January 6, 2023)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Quintez Talley, a Pennsylvania state prisoner who is proceeding pro se, appeals from an order of the United States District Court for the Eastern District of Pennsylvania that granted the defendants' motion to dismiss his complaint, which raised claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 1983, and state law. For the following reasons, we will affirm.

The claims in Talley's complaint stemmed from his transfers between a Psychiatric Observation Cell and the Diversionary Treatment Unit at SCI Graterford on January 3, 2018. (ECF 2.) He named as defendants the Department of Corrections and several of its employees. As relief, Talley sought compensatory and punitive damages.[1] The defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 10.) Talley filed a response. (ECF 11.) The District Court granted the defendants' motion, holding that Talley's allegations regarding denial of medical treatment for his disabilities were not covered by the ADA, that he failed to state a claim under § 1983 for violations of his Eighth and Fourteenth Amendment rights, and that there was no reason to retain jurisdiction over the state law claims. (ECF 20 & 21.) Talley timely appealed. (ECF 24.)

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and exercise de novo review over the order granting defendants' motion to dismiss. Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 218 (3d Cir. 2015). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

[1] Although Talley originally also sought declaratory and injunctive relief, he later withdrew that demand. (ECF 11, at 8.)

plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In his first claim, Talley alleged that the defendants discriminated and retaliated against him in violation the ADA.[2] The District Court's dismissal of these claims was proper. The ADA prohibits the exclusion of otherwise qualified participants from any program or benefits on account of their disability. To establish a violation of Title II of the ADA, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. See 42 U.S.C. § 12132. Talley asserted that he was not permitted to speak to a mental health professional before being transferred from the Psychiatric Observation Cell. (ECF 2, at ¶ 25.) But, as the defendants emphasized in their motion to dismiss, Talley did not assert that the DOC denied access to a mental health professional "by reason of" a disability. (ECF 10, at 5-6.) Notably, in his response to the motion to dismiss, Talley still did not claim that a

---

[2] To the extent that Talley brought ADA claims against the individual DOC defendants, we note that there is no liability under that Act for individual employees. See Emerson v. Thiel Coll., 296 F.3d 184, 189 (3d Cir. 2002) (per curiam) (stating that the ADA governs the prohibited actions of "employers and public entities" and not employees or managers of the organizations). We also note that punitive damages are not available under Title II of the ADA. See Bowers v. Nat'l Collegiate Athletic Ass'n, 346 F.3d 402, 429 (3d Cir. 2003) (citing Barnes v. Gorman, 536 U.S. 181, 187 (2002)).

disability was the basis for the denial of care.  (ECF 11, at 3.)  Accordingly, he failed to

state an ADA discrimination claim.   See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir.

1996) (holding that the ADA "would not be violated by a prison's simply failing to attend

to the medical needs of its disabled prisoners"); see also Tardif v. City of New York, 991

F.3d 394, 405 (2d Cir. 2021) ("At its core, the issue here is not whether Tardif was

denied medical services *because* he has a disability.  Instead, her claim relates solely to

whether she received adequate medical treatment in police custody *for* her disability, and

such a claim is not cognizable under the ADA.").

Talley also failed to state a claim for retaliation under Title V of the ADA and the

First Amendment.  To establish a prima facie case of retaliation under the ADA, a

plaintiff must show:  "(1) he engaged in conduct protected by the ADA, such as

complaining about a lack of a reasonable accommodation; (2) the defendants subjected

him to some adverse action; and (3) there was a causal connection between the protected

conduct and the adverse action."  Snell v. Neville, 998 F.3d 474, 487 (1st Cir. 2021); see

also Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (describing elements of a First

Amendment retaliation claim).  The sequence of events described in Talley's complaint

makes clear that there was no causal connection between a protected activity and any

adverse action.  Specifically, the order to transfer Talley from the psychiatric observation

cell was made *before* he asked to see a mental health professional.  (ECF 2, at ¶ 8.)

Although Talley claimed that a DOC employee threatened to use "chair and waist

restraints" and an "extraction team" if he did not comply with the transfer order, a refusal

to comply with such an order is not a protected activity for ADA or First Amendment

4

purposes.  See Watkins v. Kasper, 599 F.3d 791, 799 (7th Cir. 2010) (explaining that an inmate's conduct is not protected when he refuses to comply with a legitimate prison regulation).

In addition, Talley failed to state a claim under the Eighth Amendment based on the denial of medical care.  Talley alleged that, although he expressed suicidal ideation, two DOC employees authorized his transfer from the psychiatric observation cell to the diversionary treatment unit without first evaluating him.  To state an Eighth Amendment claim based on deliberate indifference to the risk of suicide or self-harm, the plaintiff must allege facts supporting plausible inferences "(1) that the individual had a particular vulnerability to suicide, meaning that there was a 'strong likelihood, rather than a mere possibility,' that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability."  Palakovic v. Wetzel, 854 F.3d 209, 223-24 (3d Cir. 2017).  The defendants did not contest that Talley's complaint satisfied the first two requirements.  But Talley's allegations about the "surrounding circumstances" failed to state a claim that "the delay or denial was motivated by non-medical factors."  Pearson v. Prison Health Serv., 850 F.3d 526, 537 (3d Cir. 2017).  According to his complaint, Talley was in the psychiatric observation cell on suicide watch when he was informed by the shift commander that he would be returning to the restricted housing unit.  (ECF 2, at ¶ 8.)  Talley told the shift commander that he was suicidal and that DOC policy required that he "remain on close watch until seen by a psychiatrist …."  (Id. at ¶ 10.)  Talley was

then transferred to the diversionary treatment unit. (Id. at ¶ 14.) Notably, according to Talley, both the psychiatric observation cell and the diversionary treatment unit allow for monitoring of inmates.[3] Talley was placed in waist restraints, from which he freed himself, and then into an "intermediate restraint system" belt. (Id. at ¶ 12; 16.) Despite those safeguards, however, Talley attempted to hang himself later that night. (Id. at ¶ 21.) Talley was then recommitted to the psychiatric observation cell. (Id. at ¶ 22.) Talley's allegations regarding this sequence of events fail to state a claim for deliberate indifference to his medical needs. To the contrary, the defendants acted to protect Talley from self-harm by ensuring that following the transfer to the diversionary treatment unit he was still subject to monitoring, by placing him in increasingly restrictive restraints to prevent him from harming himself, and by moving him back to the psychiatric observation cell when he tried to hang himself.

Talley also failed to state a claim for violation of his due process rights based on his cell transfer, as he had no protected right to be placed in the cell of his choice. See Sheehan v. Beyer, 51 F.3d 1170, 1174 (3d Cir. 1995). And Talley's placement in restraints was not an atypical and significant hardship in relation to the ordinary incidents of prison life. See Sandin v. Conner, 515 U.S. 472, 484 (1995). According to his complaint, Talley was handcuffed while being escorted from the psychiatric observation cell to the diversionary treatment unit. (ECF 2, at ¶ 12.) At the diversionary treatment

---

[3] According to Talley, in the psychiatric observation cell, inmates are subject, "if necessary, … [to] constant supervision" (ECF 2, at ¶ 7), and the diversionary treatment unit permits video monitoring of inmates. (Id. at ¶ 12.)

unit, Talley was placed into waist restraints. (Id. at ¶ 12; 16.) Although Talley "anticipated" that he would be in restraints for 24 hours, he explained that in fact he was in the waist restraints for a "near hour and a half" and that he freed himself from those restraints "shortly after" being placed in them. (ECF 16.) After freeing himself from the waist restraints, Talley was placed into an "intermediate restraint system" belt.[4] (Id. at ¶ 12.) Then, sometime "later that night[,]" during the "3d shift[,]" Talley attempted to hang himself and was "recommitted to the [psychiatric observation cell], where he'd just [been] forced to leave … mere hours prior …." (ECF 21-22.) Talley merely speculated that the restraints were used as a means of punishment, and he did not allege that the restraints left him in an uncomfortable position or that he suffered any injuries. Under these circumstances, we conclude that Talley failed to state a claim that he suffered an atypical or significant hardship giving rise to due process protections. Finally, the District Court acted within its discretion in declining to exercise jurisdiction over Talley's pendant state law claims. See Doe v. Mercy Cath. Med. Ctr., 850 F.3d 545, 567 (3d Cir. 2017) ("A court may [decline to exercise supplemental jurisdiction] under 28 U.S.C. § 1367(c)(3) when it dismisses all claims over which it has original jurisdiction.").

For the foregoing reasons, we will affirm the judgment of the District Court.[5]

---

[4] When entering Talley's cell to apply the intermediate restraint system, a "member of the extraction team who was in charge of the shield ran at [him] at full speed – forcing [him] to be lifted off of [his] feet and violently slammed to the bed!" (ECF 2, at ¶ 17.) Talley specifically did not seek to bring an excessive force claim based on this incident. (Id. at ¶ 27 n.4.)

[5] We deny Talley's "Motion to Have Previously Filed Briefs in Support of Appeal Submitted to Panel" and his "Motion for the Appointment of Standby Counsel,

7

Alternatively an Injunction."