**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-2046
_____

SHAWN WILLIAMS,
Appellant

v.

JAIME SORBER, Former Superintendent of SCI Phoenix; JOHN E. WETZEL, Former
Secretary of the Pennsylvania Department of Corrections; GEORGE M. LITTLE, Former
Secretary of the Pennsylvania Department of Corrections

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:23-cv-02982)
District Judge: Honorable Nitza I. Quiñones Alejandro

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 28, 2025

Before: SHWARTZ, MONTGOMERY-REEVES, and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 16, 2025)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Shawn Williams, a Pennsylvania prisoner proceeding pro se, appeals an order granting the defendants' motion to dismiss his amended civil rights complaint. For the following reasons, we will affirm.

I.

In 2023, Williams, a Pennsylvania prisoner, filed a pro se complaint, which he later amended, raising claims related to his transfer to the "quarantine housing (segregated confinement) unit" at SCI Phoenix during the COVID-19 pandemic. He named as defendants Jaime Sorber, a former superintendent of SCI Phoenix, as well as John E. Wetzel and George M. Little, two former secretaries of the Pennsylvania Department of Corrections. Williams asserted that he "declined to be vaccinated due to his religious beliefs." As part of an effort by Superintendent Sorber to remove all unvaccinated prisoners from the general prison population, Williams was transferred to a quarantine unit, where he remained from approximately August 1, 2021, until April 1, 2022. While in the quarantine unit, Williams was housed with an inmate who had recently tested positive for COVID. In addition, Williams was subject to restrictive conditions that, he claimed, "took a toll on his mental and physical well being." He also alleged that his "efforts to pursue a legal claim [were] hindered . . . when he was not allowed access to an adequate law library."

The District Court granted the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), holding that Williams failed to state claims for alleged violations of his Eighth Amendment, substantive and procedural due process, equal

2

protection, First Amendment, and access to the courts rights. Williams timely appealed. (ECF 30.)

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and exercise de novo review over the order granting the defendants' motion to dismiss. Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 218 (3d Cir. 2015). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation omitted).

## III.

A.      Eighth Amendment Claims

The Eighth Amendment protects prison inmates against cruel and unusual punishment. See Whitley v. Albers, 475 U.S. 312, 318-19 (1986). To assert an Eighth Amendment conditions of confinement claim, a prisoner must demonstrate that (1) objectively the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) subjectively the prison officials acted with "deliberate indifference[,]" i.e., that prison officials knew of and disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 833, 837 (1994).

Williams alleged that while he was on the quarantine unit between August 1, 2021, and April 1, 2022, he was allowed out of his cell for only short periods of time per day to use the phone, to shower, and to access the kiosk. He further claimed that he was "not allowed access to the law library/regular library, religious services, vocational

3

programs, legal visits, contact visits, or anything else off the housing unit[,]" including the "yard." Williams also asserted that he was "only allowed to have four [Z]oom visits" and was not "permitted physical contact with any of his visitors under any circumstances." On August 18, 2021, Williams was "forced out of [his] cell[] . . . wear[ing] a T-shirt[s], underwear, and shower shoes" and made to "stand in the middle of the dayroom for dogs to sniff him while guards tossed his cell." Between December 3, 2021, and December 17, 2021, and again between January 19, 2022, and February 2, 2022, COVID-19 outbreaks required that the quarantine unit be put on "indefinite lockdown," which meant that Williams "had no access to cleaning supplies, clean (fresh) air, law library etc. and [he] was also denied access to see the psychologist when he requested."

The conditions described above are not sufficiently extreme for a jury to conclude that Williams was deprived of the "minimal civilized measure of life's necessities." See Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (stating that the Eighth Amendment does not guarantee comfortable incarceration); see also Hudson v. McMillian, 503 U.S. 1, 8-9 (1992) (holding that only "extreme deprivations" are sufficient to make out a conditions of confinement claim). Although Williams' time outside his cell was restricted, he still had regular access to food, showers, recreation, and communications via video. See Trujillo v. Williams, 465 F.3d 1210, 1225 n.17 (10th Cir. 2006) (holding prisoner's allegations of limited access to employment, education, housing assignment, religious programming, recreation time and equipment, telephone and commissary did not state an Eighth Amendment claim); Pearson v. Ramos, 237 F.3d 881, 884 (7th Cir. 2001)

4

(concluding that the denial of recreation privileges for no more than ninety days was not cruel and unusual punishment); see also Overton v. Bazzetta, 539 U.S. 126, 137 (2003) (explaining that withdrawal of visitation privileges for limited period for legitimate purpose does not deprive inmate of basic necessities). In addition, the temporary loss of access to the law library and legal visits, religious services, and vocational programs, did not deprive Williams of the minimal civilized measure of life's necessities. Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (explaining that life's necessities include "basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety"). Furthermore, Williams failed to state an Eighth Amendment claim based on the August 2021 search because he did not allege facts suggesting that the defendants were "rid[ing] roughshod over [his] property rights with impunity" in a "calculated harassment unrelated to prison needs." Hudson v. Palmer, 468 U.S. 517, 530 (1984).

Williams also failed state a claim based on the denial of his request to see a psychologist after he expressed suicidal thoughts. It is well settled that liability under § 1983 may not be based on the doctrine of respondeat superior. See Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993). Williams did not indicate that any of the three named defendants were aware of his request to see a psychologist or that they were involved in the decision to deny it. Instead, his complaint alleged only that he reported to "staff" that he was having suicidal thoughts and that "staff" denied his request to see a psychologist. The District Court determined that Williams' allegations regarding the denial of mental health care "are not tied to any of the named defendants." Williams has

not meaningfully challenged that ruling,[1] nor has he argued that the District Court abused its discretion in holding that further amendment of his complaint would be futile. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016) (stating that litigants forfeit claims that they fail to develop in an opening brief).

We also conclude that Williams failed to state an Eighth Amendment claim based on his allegation that the defendants housed him with an inmate who had recently tested positive for COVID. According to Williams, that inmate tested positive a few days before being transferred to SCI Phoenix on November 1, 2021, was not retested prior to being moved into Williams' cell, and told Williams that he still had mild symptoms. But despite exposure to his cellmate, Williams did not contract COVID and he did not allege that he otherwise suffered or will suffer any harm as a result of being housed with a potentially COVID-positive inmate in November 2021. See Bayley's Campground, Inc. v. Mills, 985 F.3d 153, (1st Cir. 2021) (noting that record supportably showed that COVID had an incubation period of up to two weeks). Under these circumstances, we conclude that Williams' allegations are insufficient to state a claim under the Eighth Amendment. See Baze v. Rees, 553 U.S. 35, 49-50 (2008) (explaining that although "subjecting individuals to a risk of future harm—not simply actually inflicting pain—can qualify as cruel and unusual punishment," to constitute a violation of the Eighth

---

[1] Although Williams states in his brief that he informed Superintendent Sorber that he did not have "adequate access to . . . psych" services, we "may only look to the factual allegations asserted in the complaint." Gordon v. Wawa, Inc., 388 F.3d 78, 84 (3d Cir. 2004).

Amendment, "the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" (quoting Helling v. McKinney, 509 U.S. 25, 34-35 (1993))).

B.      Substantive and Procedural Due Process

The District Court properly rejected Williams' substantive and procedural due process claims. In the amended complaint, Williams vaguely alleged that the restrictions that he faced in the quarantine unit violated his substantive due process rights. But the defendants' actions in trying to limit the spread of the virus at SCI Phoenix were not so egregious or outrageous as to shock the conscious. See Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010) ("Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct.") (cleaned up).

In addition, Williams failed to state a procedural due process claim based on his transfer to the quarantine unit. A prisoner's procedural due process rights are violated when he is deprived of a legally cognizable liberty interest, which occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). It is well settled that a prisoner does not have a protected right to be placed in the cell or unit of his choice. See Sheehan v. Beyer, 51 F.3d 1170, 1174 (3d Cir. 1995). And we have held that months-long stays in restrictive confinement did not implicate a liberty interest. See Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002); Griffin, 112 F.3d at 706-08 (holding that fifteen months in administrative custody was insufficient to trigger a due process protections). In this case, the District Court concluded that the "process afforded

7

was sufficient to account for the interests at stake . . . because the prison had an interest in preventing the spread of Covid and keeping inmates safe, and inmates were given the opportunity to either take the vaccine or, if they could not do so, accept more restrictive housing." We agree. Williams alleged that he was notified of the reasons for the transfer to the quarantine unit and that he had an opportunity to use the prison grievance system to challenge the transfer. His suggestion that prison officials failed to respond to his grievances and that those grievances resulted in "no fair resolution" is not sufficient to establish a procedural due process violation. Cf. Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (stating that "the existence of a prison grievance procedure confers no liberty interest on a prisoner").

C.      Equal Protection

Williams alleged that he was treated differently than other inmates because he was housed on the quarantine unit for being unvaccinated even though he was not sick and consistently tested negative. To state an equal protection claim, Williams had to allege that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008) (citing Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006)). The District Court properly rejected this claim because Williams did not allege facts suggesting that he was intentionally treated differently from other similarly situated SCI Phoenix inmates. See Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010). In fact, Williams asserted that "only unvaccinated inmates were being quarantined."

8

D. First Amendment Retaliation

According to Williams, the defendants housed him on the quarantine unit in retaliation for exercising his right to practice his religion and his right to refuse medical treatment. To state a prima facie case of First Amendment retaliation, a claimant must allege that (1) he engaged in constitutionally protected conduct, (2) he suffered an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights," and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (alteration in original) (internal quotation marks omitted). The District Court properly held that Williams failed to plausibly allege that the exercise of his constitutional rights was a substantial factor in the defendants' decision to transfer him to the quarantine unit. It is clear from the amended complaint that Williams and other unvaccinated inmates were transferred to the quarantine unit to prevent the spread of COVID. Williams claimed that he chose to not be vaccinated for religious reasons, but that that does not establish that the exercise of his religion was a "substantial or motivating" factor in the decision to move him to the quarantine unit.

E. Access to the Courts

Prisoners have a constitutional right of meaningful access to the courts. See Lewis v. Casey, 518 U.S. 343, 351 (1996). To state a cognizable access-to-courts claim, a plaintiff must allege: (1) an "actual injury" (i.e., a lost opportunity to pursue a nonfrivolous claim challenging his sentence or conditions of confinement); and (2) that there is no other remedy, save the present civil rights suit, that can possibly compensate

9

for the lost claim.  Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (per curiam).

Referring to his Post-Conviction Relief Act proceedings, Williams alleged that the

defendants prevented him from "properly prepar[ing] his Nunc Pro Tunc Petition to the

PA Supreme Court on or about October 19, 2021."  Publicly available records in those

proceedings indicate that the Pennsylvania Superior Court affirmed the dismissal of his

PCRA petition on May 7, 2020.  Commonwealth v. Williams, 2020 WL 2299761 (Pa.

Super. Ct. May 7, 2020); see also Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007)

(recognizing that courts may take judicial notice of matters of public record, including

judicial proceedings).

Williams alleged that, when he learned that his attorney failed to file a petition for

allowance of appeal, his confinement in the quarantine unit prevented him from using the

law library to prepare a request for leave to file the petition.  But the docket reflects that

he did file a petition for allowance of appeal on August 4, 2020, three days after he was

transferred to the quarantine unit.  Commonwealth v. Williams, 2825 EDA 2018 (Pa.

Super. Ct.)  Then, on October 19, 2021, Williams – who was still on the quarantine unit –

sought permission to file a petition for allowance of appeal nunc pro tunc.

Commonwealth v. Williams, 73 EM 2021 (Pa.).  As the defendants noted, Williams'

appeal of the Superior Court decision was long overdue by the time he was placed on the

quarantine unit.  Moreover, he did not explain how access to the law library would have

assisted in the preparation of his request to file a petition for allowance of appeal nunc

pro tunc, nor did he identify why the underlying challenge to his sentence would have

been successful.  See Monroe, 536 F.3d at 205-06 (explaining that prisoners must

10

describe the underlying arguable claim well enough to show that it is more than "mere hope"). Under these circumstances, Williams failed to state a plausible access to the courts claim.

## IV.

In sum, we will affirm the District Court's judgment.[2]

---

[2] The Appellees' Motion to Partially Strike Appendix is granted. Because the material in Exhibits A through D of Williams' Appendix was not before the District Court, those exhibits are stricken from the record. See Burton v. Teleflex Inc., 707 F.3d 417, 435 (3d Cir. 2013) (stating that a party may supplement the record on appeal in only "exceptional circumstances").

11